UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
ANTONIO FLORES, *pro se*,  
    also known as "Miguel A. Lopez,"

                      Petitioner,

          -against-

ROBERT ERCOLE,  
    Superintendent, Green Haven Correctional Facility,

                      Respondent.
-------------------------------------------------------------x

**MEMORANDUM AND ORDER**

09-CV-602 (DLI)

**DORA L. IRIZARRY, United States District Judge:**

Petitioner Antonio Flores, *pro se*,[1] seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (*See generally* Docket Entry No. 1 ("Pet.").) Petitioner challenges his New York state court convictions by claiming that: (1) the trial court improperly admitted expert witness testimony on gang violence, in violation of his First Amendment right to freely associate and in violation of his Fourteenth Amendment Due Process rights; (2) the trial court improperly imposed consecutive sentences, in violation of the Fifth and Eighth Amendments; and (3) his trial counsel was ineffective, in violation of the Sixth Amendment as established by *Strickland v. Washington*, 446 U.S. 668, 690–91 (1984). (*See generally* Pet.; *see also* Docket Entry No. 8 ("Reply").)

The Kings County District Attorney, as counsel for Respondent, opposes each claim alleged in the petition. (*See generally* Docket Entry No. 5 ("Resp.").) For the reasons set forth below, the petition is denied in its entirety.

---

[1] As a *pro se* litigant, Petitioner's pleadings are held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The court will construe his pleadings and papers "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006) (emphasis omitted).

I. BACKGROUND

The facts established at trial demonstrated that on the night of December 22, 2003, Petitioner and an accomplice named Carlos Cruz[2] ("Codefendant") attended a party at a club in Brooklyn, New York. (Tr. 519; 524; 529–38; 542–43; 549.) At approximately 2:00 AM the next morning, Petitioner and Codefendant fired into a crowd of people outside the club. One of their bullets struck Sergio Hernandes in his jaw. (*Id.* at 449–51.) Two struck Javier Garcia in the torso, passing completely through his body. (*See id.* at 454; 461–62.) Olivia Garcia was hit once in her torso and once in her head. (*Id.* at 474.) Hernandes and Javier Garcia survived their gunshot wounds; Olivia Garcia did not.

Nearby police officers who had heard the shots pursued Petitioner and Codefendant as they fled the scene of the shooting. (Tr. 156–64; 181.) Five to seven minutes later, after observing the two men run up a fire escape approximately one block from the club, police arrested both men on a rooftop as they attempted to break into a skylight. (*Id.* at 191–98; 216; 227; 269; 287–92.)

Detectives recovered six shell casings (one 9mm casing and five .380 caliber casings) from the scene of the shooting. (Tr. 237–38; 241–46; 257–60.) Detectives also recovered a .380 caliber semi-automatic handgun and a 9mm semi-automatic handgun from the street down which Petitioner and Codefendant ran while fleeing from the scene. (*Id.* at 165–66; 175–77; 210; 609–14.) A doctor recovered two .380 caliber bullets from Olivia Garcia's body during an autopsy.[3] (*Id.* at 477; 500–01.) Ballistics experts concluded that these bullets and the spent casings all came from the two handguns found near the scene of the shooting. (*Id.* at 503–09.)

---

[2] Cruz also has a pending habeas action in this District. *See generally Cruz v. Raymond*, 10-CV-1491 (CBA)(LB).

[3] The record is unclear as to whether any bullets were retrieved from the surviving victims.

Petitioner and Codefendant were tried together, but before separate juries. At the trial, an eyewitness who had identified Petitioner as one of the shooters in a line-up again identified him before Petitioner's jury. (Tr. 102–03; 112–13; *see also id.* at 378.) Another eyewitness, who had previously identified Codefendant as one of the shooters in a line-up, identified Codefendant before the other jury.[4] One of the surviving victims testified that Codefendant was at the club prior to the shooting, and identified Codefendant as one of the shooters. (*Id.* at 532, 543.)

As evidence that gang tensions motivated the shooting, the prosecution offered testimony that Hernandes had asked the club DJ to offer a "shout-out" to the Sombras (a Mexican gang) over the microphone, and the DJ complied. (Tr. 520, 525.) Hernandes and Javier Garcia then asked the DJ to offer a "shout-out" to "Los Primos" (another Mexican gang), but the DJ declined this request. (*Id.* at 530, 540.) The prosecution offered further evidence that both Petitioner and Codefendant were members of Chicano Nation, and that this gang had a rivalry with Sombras and Los Primos. (*Id.* at 641–45, 653, 662.) An expert witness for the prosecution testified that a "shout-out" made on behalf of one gang in the presence of another gang can lead to acts of violence, and had sparked prior shootings in the New York area. (*Id.* at 646.)

The jury convicted Petitioner of Murder in the Second Degree (N.Y. Penal Law § 125.25[1]), Attempted Murder in the Second Degree (N.Y. Penal Law §§ 110/125.25[1]), Assault in the Second Degree (N.Y. Penal Law § 120.05[2]), Reckless Endangerment in the First

---

[4] (*Id.* at 59–61, 66, 76–78.) The Kings County District Attorney's response to the instant petition directs the court to the facts section of its state appellate brief, in which it correctly states that a third eyewitness testified at trial that he had also previously identified Codefendant in a line-up. (Br. 19.) However, Respondent fails to mention that, at the end of the trial, both parties stipulated that this third eyewitness did *not*, in fact, identify Codefendant in a pretrial line-up. (Tr. 731, 734, 947.) This omission is a significant error which, at best, displays an unacceptable lack of familiarity with the record. At worst, Respondent intentionally misrepresented the facts to the state appellate courts and, in turn, to this court. The court is inclined to give Respondent the benefit of the doubt. However, in light of the serious prosecutorial misconduct that recently came to light in *Collins v. Ercole*, Docket No. 08-CV-1359(DLI) (E.D.N.Y.), the court may not be so inclined in the future.

Degree (N.Y. Penal Law § 120.25), and Criminal Mischief in the Fourth Degree (N.Y. Penal Law § 145.00[1]). The trial court sentenced Petitioner to consecutive prison terms for the murder of Olivia Garcia (24 years), the attempted murder of Javier Garcia (20 years), and the assault of Sergio Hernandes (7 years). (Sentencing Tr. 21–22.) The trial court also sentenced Petitioner to three-and-a-half to seven years of imprisonment on the reckless endangerment charge and one year of imprisonment on the criminal mischief charge, both running concurrently with each other and the other sentences. (*Id.* at 22.)

Petitioner subsequently challenged his conviction and sentences, and the New York State appellate courts affirmed them in their entirety. *See generally People v. Flores*, 46 A.D.3d 570 (2d Dep't 2007), *lv. denied* 10 N.Y.3d 765 (2008). Specifically, the Appellate Division, Second Department ("Appellate Division") held that his "challenge to the admission of expert testimony regarding the customs and practices of Mexican-American gangs is without merit," as it "was relevant to the issue of . . . motive and was a necessary background to explain to the jury the sequence of events." *Flores*, 46 A.D.3d at 571 (citations omitted). The Appellate Division further upheld the imposition of consecutive sentences "because the offenses were separate and distinct acts, notwithstanding that they occurred in the course of a continuous incident . . . . Moreover, the sentence imposed was not excessive." *Id.* at 571–72 (citations omitted). Finally, the Appellate Division held that Petitioner's "contention that he was denied the effective assistance of counsel is without merit." *Id.* at 571 (citations omitted). Petitioner did not seek a writ of certiorari from the United States Supreme Court, and timely filed the instant petition on February 9, 2009.

## II. DISCUSSION

### A. Legal Standards

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which governs the review of petitions challenging state convictions entered after 1996, federal courts may grant habeas relief only if the state court's adjudication on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A decision is "contrary to" federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). An "unreasonable application" is one in which "the state court identifie[d] the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." *Id.* at 413. A federal court may not grant relief "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the state court's application must have been "objectively unreasonable." *Id.* at 409. Finally, "a determination of a factual issue made by a State court shall be presumed to be correct," and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

### B. Admission of Expert Witness Testimony Relating to Gangs

Petitioner's first claim for habeas relief is that the trial court violated his First Amendment right of freedom of association and his Fourteenth Amendment rights to equal protection and due process by improperly admitting expert witness testimony regarding gang violence for the purpose of showing his motive.[5] (*See* Reply 1–5.) However, it is well-established that state evidentiary rulings generally do not merit federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Marshall v. Lonberger*, 459 U.S. 422, 438 (1983); *Aponte v. Scully*, 740 F. Supp. 153, 158 (E.D.N.Y. 1990). Acknowledging this, Petitioner nevertheless contends that "New York's practice of relying on 'gang experts' . . . is both contrary to and an unreasonable application of federal law." (Reply 2.) In support of this contention, he cites to two United States Supreme Court cases: *Dawson v. Delaware*, 503 U.S. 159 (1992), and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

In *Dawson*, the Supreme Court held that evidence of defendant's membership in the Aryan Brotherhood, a white supremacist gang, "had no relevance to the sentencing proceeding" at issue. *See* 503 U.S. at 166. Therefore, it is easily distinguished from the instant case in which, as the Appellate Division held, Petitioner's gang membership was highly relevant to his motive for committing the charged crimes. *See Flores*, 46 A.D.3d at 571. Petitioner's citation to *Daubert* is equally unavailing as that case involved the scope of the *Federal* Rules of Evidence, as opposed to the *state* evidentiary ruling at issue here. *See* 509 U.S. at 588–92. Furthermore, *Daubert*'s holding—that expert testimony must be sufficiently reliable, *id.* at 589—does not compel a result different from the one reached by the trial court, and Petitioner's arguments to

---

[5] Petitioner also argues that the government relied solely on his race to link him to a gang. This assertion is belied by the record, as the prosecution presented evidence that Petitioner's and Codefendant's tattoos indicated gang membership at the time of the shooting. (Tr. 641–45, 653, 662.)

the contrary go merely to the weight, as opposed to the admissibility, of the evidence.[6] In sum, the court cannot find that the admission of the expert testimony at issue represented an "objectively unreasonable" application of clearly established federal law. *Williams*, 529 U.S. at 409; *see also* 28 U.S.C. § 2254(d).

Even if the trial court evidentiary decision was objectively unreasonable, in order to merit habeas relief for denial of due process, Petitioner would have to show that the error "denied him a fundamentally fair trial." *Collins v. Scully*, 755 F.2d 16, 18 (2d Cir. 1985); *see also id.* at 19 (requiring a petitioner to show that "the erroneously admitted evidence, viewed objectively in light of the entire record before the jury, was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it."). If other evidence, properly admitted at trial, is sufficient to support the conviction, habeas relief is not merited. *See Johnson v. Ross*, 955 F.2d 178, 181 (2d Cir. 1992).

Here, setting aside the expert testimony at issue, the other properly admitted evidence was more than sufficient to support the conviction. Multiple eyewitnesses, including one of the victims, identified Petitioner and Codefendant as the shooters. Furthermore, police pursued both men as they fled the scene of the shooting, apprehended them nearby almost immediately, and found the murder weapons along the route by which they had fled. Thus, the court cannot conclude that the expert testimony, regardless of whether it was properly admitted, was "sufficiently material to provide the basis for conviction or to remove a reasonable doubt that

---

[6] With respect to admissibility, the court agrees with the Appellate Division that "the probative value of this testimony outweighed any prejudice to the defendant," and finds that the trial court "providently exercised its discretion in admitting it." *Flores*, 46 A.D.3d at 571 (citations omitted). It is also worth noting that the witness's expertise in this area was based on "arresting . . . well over 5,000 gang members since 1993 in every precinct in New York City, and also training extensively with [numerous other police departments] specifically on Mexican street gangs." (Tr. 631.)

7

would have existed on the record without it," *Scully*, 755 F.2d at 18, and habeas relief is accordingly unwarranted as to Petitioner's first claim.

### C. Imposition of Consecutive Sentences

Petitioner's second claim for habeas relief is that the evidence did not establish that separate acts caused injuries to each of the three victims, making the trial court's imposition of consecutive sentences a violation of its authority under state law. (Pet. 5; Reply 9–10.) However, federal habeas review is limited to questions of constitutional and federal law, and "there is no constitutionally cognizable right to concurrent, rather than consecutive, sentences." *United States v. McLean*, 287 F. 3d 127, 136–37 (2d Cir. 2002) (internal quotations omitted); *see also Charles v. Fischer*, 516 F. Supp. 2d 210, 224 (E.D.N.Y. 2007) (holding that the imposition of consecutive sentences under state law is not a ground for habeas relief); *Figueroa v. Grenier*, 2005 WL 249001, at *15 (S.D.N.Y. Feb. 3, 2005) (same); *Davis v. Herbert*, 2003 WL 23185747, at *15 (E.D.N.Y. Oct. 24, 2003) (same). Construing his papers to raise the strongest arguments they imply, Petitioner invokes the Fifth Amendment's Double Jeopardy Clause and the Eighth Amendment's prohibition of cruel and unusual punishment in an effort to create a constitutional question cognizable on habeas review. Both efforts fail, as set forth below.

#### 1. Petitioner's Double Jeopardy Clause Claim Lacks Merit

"With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366 (1983) (emphasis omitted); *see also Brown v. Ohio*, 432 U.S. 161, 165 (1977). The question thus becomes whether the sentencing court exceeded its authority to impose consecutive sentences under New York law.

In New York, consecutive sentences are valid if each sentence results from a "separate and distinct" act. *People v. Laureano*, 87 N.Y.2d 640, 643 (1996) (discussing N.Y. PENAL LAW § 70.25[2]); *see also People v. Underwood*, 52 N.Y.2d 882, 883 (1981) (finding consecutive sentences invalid when state failed to demonstrate separate or distinct acts). Even if the offenses were committed as "part of a single transaction," and "even if the statutory elements of [the] multiple offenses overlap," consecutive sentences remain valid so long as the offenses were "committed through separate and distinct acts." *People v. Ramirez*, 89 N.Y.2d 444, 451 (1996). When defendants fire multiple gunshots and wound multiple victims, each shot constitutes a "separate act," meaning that consecutive sentences are valid so long as different bullets wounded each victim. *See People v. Brathwaite*, 63 N.Y.2d 839, 843 (1984). In such cases, the firing of multiple shots alone is sufficient to support a conclusion that each victim was hit by a separate bullet, unless the evidence shows otherwise. *See People v. Rivera*, 262 A.D.2d 31 (1st Dep't 1999) (consecutive sentences valid when defendant fired five to six shots, injuring two victims); *People v. Black*, 249 A.D.2d 318, 319 (2d Dep't 1998) (consecutive sentences valid when defendant fired numerous shots, injuring eight victims); *see also People v. Jones*, 41 A.D.3d 507, 508–09 (2d Dep't 2007) (consecutive sentences improper where one victim was shot five times and another was shot twice, but defendant only fired five shots).

In the present case, detectives recovered six shell casings from the scene of the crime, indicating that Petitioner and Codefendant fired at least six shots between them. (*See* Tr. 237–38, 241–46, 257–60.) Because each gunshot constituted a "separate act," Petitioner's consecutive sentences were valid so long as different bullets wounded each of the three victims. *See Brathwaite*, 63 N.Y.2d at 843. According to testimony credited by the jury, Javier and Olivia Garcia were each hit twice and Hernandes was struck once. (*See* Tr. 449–51, 454, 461–62, 477.)

Two different weapons were used in the shootings, a 9mm and a .380 caliber semi-automatic handgun, and two .380 bullets were removed from Olivia Garcia's body during the autopsy. (*See* Tr. 165–66, 175–77, 210, 500–01, 609–14.) As previously mentioned, absent evidence to the contrary, the firing of multiple shots combined with the victims' multiple gunshot wounds is sufficient to demonstrate that the victims were hit by separate bullets. *See Rivera*, 262 A.D.2d at 31; *Black*, 249 A.D.2d at 319. Petitioner offers no evidence to the contrary, and nothing in the record demonstrates, for example, that any of the bullets that entered and exited Javier Garcia's body went on to strike Olivia Garcia or Hernandes. Accordingly, under these facts and circumstances, the wounding of two victims and the killing of a third by multiple gunshots constituted three separate and distinct acts under New York law. As such, Petitioner's consecutive sentences did not violate either state law or the Double Jeopardy Clause. Accordingly, habeas relief is unwarranted on this ground.

### 2. Petitioner's Consecutive Sentences Do Not Violate the Eighth Amendment

As a general matter, "the Eighth Amendment prohibits imposition of a sentence that is grossly disproportionate to the severity of the crime." *Rummel v. Estelle*, 445 U.S. 263, 271 (1980). However, "[o]utside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." *Id.* On habeas review, "[n]o federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law." *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992). As explained in Part II.C.1, *supra*, Petitioner's sentence is valid under state law. Accordingly, his sentence is not a cause for habeas relief on Eighth Amendment grounds.

### D. Ineffective Assistance of Counsel

Petitioner's final claim for habeas relief is that he was denied the effective assistance of counsel in violation of the Sixth Amendment. (*See* Pet. 5.) Specifically, he argues that his trial counsel failed to: (1) diligently examine the expert witness; (2) keep out testimony about Codefendant's teardrop tattoo; (3) object to the prosecutor's summation; and (4) provide meaningful representation at sentencing. (*Id.*)

As an initial matter, counsel is "strongly presumed" to have rendered adequate assistance and to have made all significant decisions in the exercise of reasonable professional judgment. *Strickland*, 466 U.S. at 689. Furthermore, "[s]trategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 690. To establish ineffective assistance under *Strickland*:

> a defendant must show that counsel's representation "fell below an objective standard of reasonableness" based on "prevailing professional norms" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." The *Strickland* Court defined a "reasonable probability" as "a probability sufficient to undermine confidence in the outcome."

*Eze v. Senkowski*, 321 F.3d 110, 123 (2d Cir. 2003) (*quoting Strickland*, 466 U.S. at 694).

Having thoroughly examined the trial record, the court concludes that counsel's performance did not fall below an objective standard of reasonableness with respect to any of Petitioner's allegations. Accordingly, as discussed below, Petitioner's *Strickland* claim does not warrant habeas relief. *See* 466 U.S. at 694.

#### 1. Examination of the Expert Witness

Petitioner's allegation that his trial counsel failed to diligently examine the prosecution's expert witness is belied by the record. His counsel vigorously contested the certification of the witness as an expert, bringing out, for example, the fact that the witness lacked a bachelor's

degree and was not fluent in Spanish. (*See* Tr. 623–24, 635.) Counsel's objection was successful to the extent that his objection to the witness's certification was sustained initially. (*Id.* at 630.) Furthermore, Petitioner's counsel thoroughly cross-examined the expert on the relationship between tattoos and gang membership. (*Id.* at 649–56; 653–54.) Although the *effectiveness* of this cross examination can be questioned, there is no reason to believe that a different line of questioning would have resulted in a different outcome. *See Strickland*, 466 U.S. at 694.

### 2. Evidence of Codefendant's Tattoo

Petitioner's jury saw evidence that Codefendant, subsequent to his arrest but prior to trial, got a teardrop tattoo on his cheek. (Tr. 665–66.) The jury also heard testimony that such a tattoo sometimes indicates that its displayer has killed someone. (*Id.* at 645–46, 658–61.) Although Petitioner alleges that his counsel should have objected to this evidence, he fails to propose any basis upon which his counsel might have done so. Regardless, any objection likely would have been overruled as the evidence was probative as to the question of defendants' guilt and did not violate any evidentiary rule or the Fifth Amendment. *See Vera v. Woods*, 2008 WL 2157112, at *12 (E.D.N.Y. May 21, 2008) ("[B]ecause tattoos are physical characteristics and not testimony, they do not implicate a defendant's Fifth Amendment right against self-incrimination . . . The position of New York courts on this legal issue is completely consistent with clearly established federal law . . . .") (collecting cases). It is also worth noting that Petitioner's jury heard Codefendant's counsel raise the possibility that the tattoo in question merely commemorated the loss of Codefendant's nephew, a theory the jury was free to credit. (Tr. 658–59, 710–12.) Nevertheless, there is no reason to believe that an objection by Petitioner's counsel as to this line of questioning would have resulted in a different outcome. *See Strickland*, 466 U.S. at 694.

### 3. Prosecutor's Summation

Petitioner's claim that his trial counsel improperly failed to object to the prosecution's summation is equally unavailing. "The government has broad latitude in the inferences it may reasonably suggest to the jury during summation." *United States v. Harry*, 308 F. App'x 516, 517 (2d Cir. 2009) (quoting *United States v. Casamento*, 887 F.2d 1141, 1189 (2d Cir. 1989)). "While it may not refer to facts that are not in the record or misstate evidence, the government may suggest to the jury inferences that can be fairly drawn from the evidence." *Id.* (citations omitted).

The prosecutor here discussed evidence that placed Petitioner and Codefendant at the party before the shooting, evidence of motive, eyewitness accounts of the shooting, ballistic evidence, the police chase following the shooting, and the strength of witness identifications of Petitioner and Codefendant. (Tr. 833–35, 838–46, 840, 847–54.) All of the inferences he suggested, none of which was inflammatory, reasonably could have been drawn from the evidence presented at trial, and thus his summation was appropriate. (*See generally id.* at 832–58); *see also Harry*, 308 F. App'x at 517. As such, "defense counsel's failure to object does not support a conclusion that his performance was not reasonably competent." *Cuevas v. Henderson*, 801 F.2d 586, 592 (2d Cir. 1986). Consequently, no habeas relief is warranted on this claim. *See Strickland*, 466 U.S. at 694.

### 4. Sentencing

Petitioner alleges that his counsel failed to investigate and present mitigating evidence. (Reply 15.) It is not entirely clear whether the issue of counsel's meaningful representation at sentencing is cognizable on habeas review, as some authorities hold that *Strickland* does not apply to ineffective assistance of counsel claims at non-capital sentencing proceedings. *See, e.g.*,

*Hagen v. MacDonald*, 241 F. App'x 373, 379 (9th Cir. 2007) (*cert. denied*, 129 S. Ct. 167 (2008)). Nevertheless, the court examines Petitioner's final ineffective assistance claim in an abundance of caution.

Petitioner has not identified "the issues that should have been investigated" and has not made "a showing that such investigation would have led to a more lenient sentence, [and thus, Petitioner's] claim cannot satisfy either prong of the *Strickland* test." *United States v. Herrera*, 186 F. App'x 109, 112 (2d Cir. 2006). Petitioner also argues that his counsel should have objected to the prosecutor's characterization of Petitioner's prior conviction, but offers no explanation as to how this characterization was inaccurate and gives no indication of how an objection here might have led to a more lenient sentence. Accordingly, the court cannot say that counsel's representation at sentencing was constitutionally ineffective, and habeas relief is denied on this claim.

## III. CONCLUSION

For the reasons set forth above, the petition for a writ of habeas corpus is denied in its entirety. Petitioner is further denied a certificate of appealability, as he has failed to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see* FED. R. APP. P. 22(b); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Luciadore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000). The court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

DATED: Brooklyn, New York
October 7, 2010

/s/
DORA L. IRIZARRY
United States District Judge